**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

**BOBBY L. WILLIS, individually and as trustee for the**
**BOBBY L. WILLIS AND CARRIE S. WILLIS TRUST,**
**WILLIS ASSET MANAGEMENT, LLC,**
**JTB DEVELOPMENT PROPERTIES 3, LLC, and**
**JTB DEVELOPMENT PROPERTIES 4, LLC,**

      **Plaintiffs,**

**vs.**                                    **No. 16 CV 167 JAP/LF**

**QUENTIN SMITH and**
**STOREY & CLYDE, INC.**

      **Defendants,**

**QUENTIN SMITH and**
**STOREY & CLYDE, INC.,**

      **Counterclaimants**

**vs.**

**BOBBY WILLIS,**

      **Counterdefendant.**

### MEMORANDUM OPINION AND ORDER

In the COMPLAINT FOR FRAUD AND OTHER CLAIMS (Doc. No. 1-1)

(Complaint) Plaintiffs Bobby L. Willis (Willis), individually and as trustee of the Bobby

L. Willis and Carrie S. Willis Trust, Willis Asset Management, LLC, JTB Development

Properties 3, LLC (JTB 3), and JTB Development Properties 4, LLC (JTB 4) (together,

Plaintiffs) claim that Defendants Quentin Smith (Smith) and Storey & Clyde, Inc.

(together, Defendants) fraudulently induced Plaintiffs to purchase several Rolex watches

that were not genuine. Defendants ask the Court to dismiss all claims related to the purchase of the watches because Plaintiffs filed this lawsuit beyond the statute of limitations for claims involving the sale of goods under New Mexico's Uniform Commercial Code (UCC). *See* DEFENDANTS' FIRST MOTION TO DISMISS, SEEKING DISMISSAL OF ALL CLAIMS REGARDING ROLEX WATCHES, BASED ON STATUTE OF LIMITATION, STATUTE OF REPOSE, AND SPOLIATION OF EVIDENCE (Doc. No. 24) (Motion). Plaintiffs oppose the Motion. *See* RESPONSE TO DEFENDANTS' MOTION TO DISMISS CLAIM REGARDING ROLEX WATCHES (Doc. No. 31) (Response). Defendants replied to the Response in support of their Motion. *See* DEFENDANTS' REPLY TO THEIR FIRST MOTION TO DISMISS, SEEKING DISMISSAL OF ALL CLAIMS REGARDING ROLEX WATCHES, BASED ON STATUTE OF LIMITATION, STATUTE OF REPOSE, AND SPOLIATION OF EVIDENCE (Doc. No. 32) (Reply).

To the extent that Plaintiffs claim that Defendants' sale of non-genuine Rolexes violates the New Mexico Uniform Commercial Code (UCC), that claim can be dismissed because Plaintiffs brought this suit more than nine years after Plaintiffs accepted delivery of the watches and more than three years after discovering the watches were not genuine. Because Plaintiffs' fraud claim was brought within the four-year New Mexico statute of limitations period, the Court will allow that claim to proceed.

I.      STANDARD OF REVIEW

    A.      Legal Standard

Defendants move to dismiss under Rule 12(b)(6). "The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). In evaluating a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded facts [in the complaint], as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party. . . ." *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quotation and alteration omitted). However, the court is under no obligation to accept bare conclusory allegations. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor is the court required to accept legal conclusions without factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To summarize, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555.

> B.  Consideration of Exhibits to Complaint

In deciding a Rule 12(b)(6) motion, courts typically consider only the facts alleged in the complaint. *Martin v. Central States Emblems, Inc.*, 150 F. App'x 852, 857 (10th Cir. Oct. 11, 2005) (unpublished) (citing *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002)). However, if "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). Courts may review documents referred to in a complaint, without converting a motion to dismiss into a motion for summary judgment, if the documents are central to

the plaintiff's claim and the parties do not dispute their authenticity. *Martin*, 311 F.3d at 1035 (citing *County of Santa Fe*).

Only two of the many documents attached to Plaintiffs' Complaint are relevant to the Motion. (*See generally,* Compl. Exs. 1-24.) Exhibit 1 is a document which Plaintiffs identify as an invoice for the purchase of twenty-five PRE-OWNED ROLEX WATCHES—LOT NUMBER 2718 from Storey & Clyde, Inc. (*Id.*) Exhibit 1 is dated October 20, 2006, and the letterhead reads "Storey & Clyde, Inc., 318 South 19th Street, Suite # 102, Sparks, Nevada 89431." The document has two columns; the first column is a list of twenty-five watches identified by a letter-number combination, and the second column contains a monetary amount for each watch. The total amount for all twenty-five watches is listed as $289,742.80. In the Motion, Defendants assert that this document is a price list and not an invoice for the sale of watches. The Court will not consider Exhibit 1 because even though it appears to be central to Plaintiffs' fraud claim, Defendants dispute its authenticity and identity. Moreover, consideration of this exhibit is not necessary for ruling on the statute of limitations issue.

Exhibit 2 to the Complaint purports to be an email message dated December 26, 2012 to Carrie Willis, Willis' wife, from Jim Wolf on behalf of Heritage Auctions. (Compl. Ex. 2.) Mr. Wolf reported that "all of the watches are non-genuine—not made by Rolex[,]" and that Heritage could not auction the watches. (*Id.*) Plaintiffs point to Exhibit 2 as evidence that the watches they purchased from Defendants were fakes. Although Defendants deny that the watches sold to Willis were "fakes," Defendants do not directly attack the authenticity of Exhibit 2. Nevertheless, the Court need not consider it. The

4

alleged inauthenticity of watches sold to Plaintiffs must be taken as true for purposes of ruling on the Motion.

## II.     BACKGROUND

Plaintiffs filed the Complaint on February 1, 2016 in the Eleventh Judicial District Court, San Juan County, New Mexico. The case was removed on March 8, 2016 based on diversity jurisdiction. 28 U.S.C. § 1332(a)(1). The following background facts are either alleged by the Complaint or may reasonably be inferred from the allegations in the Complaint.

### A.     Purchase of Watches.[1]

Smith appeared on an infomercial television program that broadcast nationwide entitled "Gemsmiths" in which Smith "made representations regarding the quality and values of gemstones and jewelry upon which Willis relied in making purchases from Quentin Smith's companies." (Compl. ¶ 3.) Willis "relied upon the representations made by Quentin Smith and entered into a number of transactions with Quentin Smith to purchase gemstones, jewelry and watches beginning in 2006." (*Id.* ¶ 4.) One of the purchases was for Rolex watches "for which Bobby Willis paid $ 289,742.80 . . . ." (*Id.* ¶ 5.) Defendants admit "some watches were sold to Plaintiff Bobby Willis, [but Defendants] dispute the number of watches sold, the identity of the seller (the seller was Storey & Clyde, not Quentin Smith), . . . the purchase price, . . . and that the watches were 'fakes' as alleged in the Complaint[.]" (Mot. at 2.)

In Claim II Plaintiffs allege that they were defrauded by Defendants' "false appraisals of watches, jewelry and gemstones to which Bobby Willis and his related

---

[1] Although the Complaint alleges fraud in connection with other business transactions, the Court will recite in detail only the facts that relate to the purchase of Rolex watches.

companies relied upon to their financial detriment." (*Id.* ¶ 57A.) Essentially, the Complaint alleges the following factual basis for liability: (1) in 2006, after receiving appraisals from Defendants, Plaintiffs purchased several watches from Defendants; (2) the watches were delivered to Plaintiffs sometime in 2006; (3) in 2012, Plaintiffs sent several Rolex watches to an auction house; and (4) in December 2012, an agent of an auction house refused to sell those watches claiming they were not genuine Rolexes.

### B.     Relevant Claims in the Complaint.

Claim II is for fraud in "[p]roviding false appraisals of watches, jewelry and gemstones to which Bobby Willis and his related companies relied upon to their financial detriment[.]" (Compl. ¶ 57A.) Claim XI is for prima facie tort alleging that Smith and Garner intentionally caused harm to Plaintiffs, and that claim is asserted in the alternative. Although Claim III alleges a claim for breach of contract, no reference is made to the breach of a purchase agreement concerning the watches. (*See* Compl. ¶¶ 60-69.) Thus, the Court will not address Claim III in this opinion. However, to avoid confusion about what claims remain in this case, the Court will address the arguments in the Motion and Response related to the statute of limitations period for a UCC breach of warranty claim.

### III.     DISCUSSION

#### A.     Choice of Law.

In Claim II, which includes details alleged in ¶¶ 3-5 of the Complaint, Plaintiffs state that they were damaged when in 2006 Defendants fraudulently represented through appraisals that they would sell genuine Rolex watches to Plaintiffs for $289,742.80, but Defendants delivered non-genuine Rolex watches to Plaintiffs who resided in New

Mexico. Defendants, however, argue that the Nevada UCC governing sales of goods and the Nevada tort law governing fraud claims are applicable to all claims related to this transaction. Defendants maintain that under Nevada law, Plaintiffs are barred by both the UCC and fraud statutes of limitations. Defendants do not give a reason for their insistence that Nevada law applies.

"A federal court sitting in diversity applies the substantive law, including choice of law rules, of the forum state." *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994). Under New Mexico choice of law rules related to contracts, when an agreement does not indicate the parties' choice of law, courts apply the "most significant relationship test." *In re W. Wood Products, Inc.*, No. 11-12-10057 JS, 2013 WL 1386285, at *9 and note 5 (Bankr. D.N.M. Apr. 4, 2013) (citing *In re Rotiers*, 449 B.R. 133, 135 (Bankr. D.N.M. 2011)). Under that test, courts consider factors such as the place where the contract was negotiated, the place of performance, and the location of the subject matter of the contract. *Id.*

The Complaint states that Smith "is a resident of California, but also transacts business nationwide including San Juan County, New Mexico" and that Storey & Clyde, Inc. is a Nevada company owned and operated by Smith. (Compl. ¶¶ 1-2.) Plaintiffs have not alleged where they negotiated the agreement to buy the watches, or where they received delivery of the watches. The Complaint also does not allege where Plaintiffs reside, but in the Response, Plaintiffs assert that the watches were shipped to New Mexico "where Willises resided at the time." (Resp. at 6.) Thus, New Mexico appears to have the most significant relationship to the purchase of the watches, and the Court sees no reason to apply the Nevada UCC.

In tort actions, New Mexico courts follow the doctrine of *lex loci delicti commissi* and apply the law of the place where the wrong occurred. *Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc.*, 879 F. Supp. 2d 1228, 1253 note 5 (D.N.M. 2012). Again the primary location of the fraud alleged in this case appears to be New Mexico. Defendants maintain, without citation to authority, that the Court should apply the Nevada three-year statute of limitations for torts. The Court disagrees and concludes that no state other than New Mexico appears to have a more significant interest in this allegedly fraudulent transaction. Consequently, the Court concludes that both the New Mexico UCC and the tort law of New Mexico apply to this dispute. *Cf. San Cristobal Academy v. Transitional Living Corp.*, No. 10 CV 1152 JH/WDS, 2012 WL 6605992, * 7 (D.N.M. July 13, 2012) (applying New Mexico law to claim that party was fraudulently induced to enter contract but applying Arizona law to contract claim).

B.     Statute of Limitations under the UCC.

An agreement for the sale of watches is one for the sale of goods as defined under the New Mexico's UCC. NMSA 1978 § 55-2-105 (defining "Goods" as "all things . . . which are movable at the time of identification to the contract for sale. . . ."). Defendants argue that Plaintiffs are barred from asserting a claim related to the purchase of the watches because they brought this suit after the expiration of the four-year statute of limitations under the UCC. In the Response, Plaintiffs do not dispute the application of the UCC even though Plaintiffs do not actually assert a claim under the UCC. According to Plaintiffs, Smith acting through the entity Storey & Clyde, Inc., was a "merchant" as defined by the UCC with unequal bargaining power. Under New Mexico's UCC,  a "merchant" is "a person who deals in goods of the kind or otherwise by his occupation

8

holds himself out as having knowledge or skill peculiar to the practices or goods involved

in the transaction[.]" NMSA 1978 § 55-2-104(1). Plaintiffs contend that since Smith is a

merchant, the UCC imposes an "implied warranty of merchantability" on the goods,

which means the goods, "must be at least such as pass without objection in the trade

under the contract description." NMSA 1978 § 55-2-314(2). Under the facts alleged in

the Complaint, Defendants would have breached the implied warranty of merchantability

by delivering non-genuine Rolexes. Therefore, if Plaintiffs had asserted a UCC claim, it

would have been for breach of the implied warranty of merchantability.

  The statute of limitations for that claim is found in NMSA 1978 § 55-2-725,

which provides,

> (1) An action for breach of any contract for sale must be commenced
> within four years after the cause of action has accrued.
>
> (2) A cause of action accrues when the breach occurs, regardless of the
> aggrieved party's lack of knowledge of the breach. A breach of warranty
> occurs when the tender of delivery is made, except that where a warranty
> explicitly extends to future performance of the goods and discovery of the
> breach must await the time of such performance, the cause of action
> accrues when the breach is or should have been discovered.
>         . . .
> (4) This section does not alter the law on tolling of the statute of
> limitations nor does it apply to causes of action which have accrued before
> this act [this chapter] becomes effective.

NMSA 1978 § 55-2-725 (1), (2), and (4). Under the plain language of subsection

(2), Plaintiffs' claim for a breach of the implied warranty of merchantability

accrued in 2006, when the watches were delivered. Therefore, Plaintiffs' claim for

breach of an agreement for the sale of genuine Rolex watches is untimely. *See*

*AIG Aviation Ins. v. Avco Corp.*, 709 F. Supp. 2d 1124, 1131-1132 (D.N.M. 2010)

("actions for breach of warranty must be brought within four years of delivery,

unless the warranty explicitly guarantees future performance.") (citing NMSA 1978 § 55-2-725).

Plaintiffs maintain that they could not have discovered that the watches were not genuine Rolexes because they are not experts in the field and since they did not discover that the watches were non-genuine until December 2012, this lawsuit was timely filed. The New Mexico UCC requires that a buyer of goods that are non-conforming or defective must give the seller notice within a reasonable time. Under the UCC, "[w]here a tender has been accepted: (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" NMSA 1978 § 55-2-607(3)(a). According to Defendants, Plaintiffs waited an unreasonable time to inform Defendants that the watches were unacceptable after Plaintiffs learned the watches were non-genuine; therefore, they should be "barred from any remedy."

Defendants' position is illustrated in *Badilla v. Wal–Mart Stores East, Inc.,* --- P.3d ---, 2016 WL 5121975 (N.M. Ct. App. Sept. 15, 2016) (slip op.). In that case, the plaintiff purchased work boots from Wal–Mart in October 2003. *Id.* at *1. The packaging described the boots as "iron tough," "rugged leather," "men's work boots," and that the boots were "designed for light to medium industrial use." *Id.* Ten months after purchasing the boots, the plaintiff was injured when the sole of one boot came loose and caught on some debris causing the plaintiff to fall and injure himself. *Id.* More than three years after the fall, the plaintiff sued Wal-Mart alleging Wal-Mart breached the implied warranty of merchantability. *Id.* The New Mexico Court of Appeals framed the issue on appeal as "whether Plaintiff's filing suit after he discovered or should have discovered

10

the alleged breach amounts to reasonably timely notice, thereby complying with the language of Section 55-2-607." *Id.* at *4. The parties agreed that "[p]laintiff's discovery of the breach of any warranty concerning his boots occurred simultaneously with his injury." *Id.* On summary judgment, Wal-Mart argued that the plaintiff's claim was barred because he notified Wal-Mart, through the lawsuit, three years and two months after he was injured; therefore, under § 55-2-607(3)(c), the plaintiff failed to give notice "within a reasonable time" after he discovered the breach. *Id.* *5. The plaintiff argued that since the UCC has a four-year statute of limitations, his claim was timely because he sued within four years after he was injured. The court rejected the plaintiff's argument: "Filing a complaint within the [four-year] statute of limitations . . . cannot absolve a plaintiff of the obligation to satisfy Section 55–2–607(3)(a) requiring that the notice be provided within a reasonable time from the breach or discovery of the breach." *Id.* (citing *Wagmeister v. A.H. Robbins Co.*, 64 Ill.App.3d 964, 382 N.E.2d 23, 25 (1978)). The court upheld the dismissal concluding that, as a matter of law, the plaintiff failed to provide adequate or timely notice of Wal-Mart's breach of warranty under Section 55-2-607. *Id.* at *7.

Plaintiffs counter that one New Mexico court held that a span of four years between the discovery of goods' nonconformity and the filing of suit was reasonable. In *Ybarra v. Modern Trailer Sales, Inc.*, 1980-NMSC-044, 94 N.M. 249, 609 P.2d 331, the plaintiffs purchased a mobile home from defendants. *Id.* ¶ 3. A few days after delivery, portions of the floor began to rise and bubble, and the plaintiffs immediately complained and demanded the defendant repair the defect. *Id.* ¶ 4. The defendant unsuccessfully attempted to repair the floor on three occasions. *Id.* Over the ensuing three years, the plaintiffs periodically telephoned and visited the defendant's place of business

11

demanding repair. *Id.* ¶ 5. After the plaintiffs filed suit, the defendant sought dismissal of the complaint arguing that the plaintiffs failed to timely notify defendant of their revocation under NMSA 1978 § 55-2-608,[2] which like § 55-2-607(3)(a), requires a buyer to revoke acceptance of goods within a "reasonable time." *Id.* ¶ 6. The court noted that nearly four years had passed from the time the parties discovered the defect and the time the plaintiffs filed suit. *Id.* ¶ 8. However, the court determined that "[t]he statute creates a 'reasonable time' standard and requires the trial court to make a factual determination. We cannot say that four years is unreasonable as a matter of law." *Id.* The court stressed that the filing of suit followed "a continuing series of complaints and negotiations regarding the unacceptability of the defective mobile home and by repeated failures on the part of the seller to cure the defects." *Id.* ¶ 9. Consequently, the court upheld the denial of the motion to dismiss. *Id.*

 This case is easily distinguishable from *Ybarra* and is similar to *Badilla*. Like the plaintiff in *Badilla*, Plaintiffs notified Defendants, through the filing of this suit, more than three years after they learned the watches were fakes. As in *Badilla*, Plaintiffs could have preserved their remedies under the UCC if they had notified Defendants within a reasonable time after they learned from Mr. Wolf that the watches were non-genuine. However, unlike the plaintiffs in *Ybarra*, Plaintiffs did not complain and attempt to obtain genuine watches from Defendants during the three year period between the time they learned the watches were fakes and the filing of this lawsuit.

 Plaintiffs claim that the delay in notifying Defendants should be excused because in 2012, Willis went through a great deal of complicated legal and medical issues,

---

[2] The relevant section provides, "[r]evocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it . . . [and] [i]t is not effective until the buyer notifies the seller of it." NMSA 1978 § 55-2-608(2).

"including wrongful incarceration and many other difficult financial troubles." (Resp. at 4.) Plaintiffs assert that in 2012, Willis needed money for medical and legal bills and decided to sell the Rolex watches in December 2012 through the Heritage Auction House. (*Id.*) While these allegations explain the delay in having the watches appraised, they do not explain why Plaintiffs waited more than three years after learning the watches were fakes to assert their claim. Plaintiffs explain that after December 2012, Willis continued to have significant medical and legal problems, "so a lawsuit against Smith was not going to be top of his priority list for quite some time." (*Id.*) Plaintiffs also submit that when the auction house returned the watches, the "Willises turned them over to Dave Fitzgerald ("Fitzgerald") who has refused to return them. Willises are in the process of pursuing legal action against Fitzgerald to recover the watches." (*Id.* at 4-5.) Plaintiffs maintain that since there has been no "substantial change in the condition" of the watches, and since a reasonable time is determined under the facts of each case, "it was reasonable that Willis was not able to pursue a lawsuit against Defendants for a few years." (*Id.* at 5.) Plaintiffs cite no legal authority for their position.

The Court concludes that it was unreasonable for Plaintiffs not to notify Defendants until more than three years after Plaintiffs learned that the watches purchased for $289,742.80 were not genuine Rolex watches. Thus, if Plaintiffs had explicitly asserted a claim for breach of the implied warranty of merchantability, that claim would be dismissed because Plaintiffs failed to notify Defendants of the breach within a reasonable time under NMSA § 55-2-607(3)(a).

C.      Tort Claim for Fraud

In Claim II of the Complaint, Plaintiffs actually assert that Defendants induced them to purchase the watches based on a "fraudulent appraisal." (Compl. ¶ 57A.) As mentioned, Defendants maintain, without authority, that Plaintiffs' fraud claim is barred under the Nevada three-year statute of limitations. However, that claim is governed by New Mexico law. *Skyline Potato Co., Inc., supra.* Under New Mexico law, a claimant must bring a fraud claim within four years of "accrual." NMSA 1978 § 37-1-4. "In actions for relief, on the ground of fraud or mistake . . . the cause of action shall not be deemed to have accrued until the fraud [or] mistake . . . shall have been discovered by the party aggrieved." NMSA 1978 § 37-1-7. Normally, the limitations period begins to run "when the plaintiff discovers the fraud or when, with reasonable diligence, the plaintiff could have discovered the fraud." *Tiberi v. Cigna Corp.*, 89 F.3d 1423, 1430 (10th Cir. 1996) (quoting *Ramsey v. Culpepper*, 738 F.2d 1092, 1095 (10th Cir. 1984)).[3]

Plaintiffs maintain that they have timely asserted a claim for fraud because they filed this action in February 2016, less than four years after they discovered that the watches they purchased from Defendants were not genuine. Defendants assert that Plaintiffs' fraud claim is untimely because with reasonable diligence Plaintiffs should have discovered the alleged fraud as soon as they received delivery. According to Defendants, Plaintiffs are sophisticated buyers who should have immediately spotted non-genuine Rolexes. Alternatively, Defendants maintain that after delivery Plaintiffs should have immediately gotten another appraisal of the watches "for insurance

---

[3] Under New Mexico law, the elements of fraudulent misrepresentation are: (1) a misrepresentation of fact; (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation; (3) intent to deceive and to induce reliance on the misrepresentation; and (4) detrimental reliance on the misrepresentation. *Skyline Potato, Inc.*, 879 F. Supp. 2d at 1248-49.

14

purposes." There is no indication in the Complaint as to Plaintiffs' level of sophistication in determining the authenticity of the watches. And Plaintiffs allege they were given a fraudulent appraisal; therefore, they were not required to immediately obtain another appraisal. However, if Defendants present evidence to prove that Plaintiffs should have been aware of the inauthenticity of the watches earlier than December 2012, Defendants may assert that argument in a motion for summary judgment. At this stage, however, the Court cannot conclude that Plaintiffs are barred from bringing a common law claim of fraud.

### D.    Prima Facie Tort Claim.

For Plaintiffs' alternative claim of prima facie tort, the relevant statute of limitations is four years. *Hill v. Cray Research, Inc.*, 864 F. Supp. 1070, 1075 (D.N.M. 1991) (citing NMSA 1978 § 37-1-4). The Court will not dismiss Plaintiffs' prima facie tort claim as it relates to the purchase of watches from Defendants because the claim was brought within the four years after Plaintiffs allegedly discovered the watches were non-genuine.

### E.    Spoliation

In Plaintiffs' answers to interrogatories, Smith stated that he does not have possession of the watches and does not know where the watches are located:

> When [the watches] were returned from Heritage in approximately March 2013, Carrie Willis had Dave Fitzgerald keep them in his safe for safe keeping. Fitzgerald and Carrie Willis had a disagreement, Fitzgerald failed to return Willis's belongings resulting in Carrie Willis filing complaints with NM State Police and FBI regarding vehicles and other personal belongings which Fitzgerald failed to return to Willis. Upon information and belief, Fitzgerald sold these watches without Carrie Willis' or my knowledge or approval.

(Mot. Ex. A.) Defendants assert that without access to the watches, they cannot defend themselves against the claims in the Complaint. Defendants argue that due to Plaintiffs' "reckless spoliation of obviously crucial evidence, Plaintiffs should not be able to pursue any claims related to the watches. At a minimum, all evidence regarding the authenticity and value of the watches should be excluded, which in turn would act as a *de facto* dismissal of all claims related to the watches." (Mot. at 3.) Plaintiffs counter that they are pursuing Mr. Fitzgerald to regain possession of the watches. They also argue that they do not need to have possession of the watches because they have the "expert" opinion of Mr. Wolf as proof of the fraud. Plaintiffs attach a purported "Expert Report" authored by Mr. Wolf as Exhibit 1 to the Response.[4] However, even if Mr. Wolf's report is admitted as an expert opinion, it cannot establish that the watches Mr. Wolf examined were the same watches purchased from Defendants.[5]

More importantly, the Court cannot determine whether there has been spoliation without considering the Answers to Interrogatories attached to the Motion and the incomplete Expert Report attached to the Response. If those documents are considered, the Court would have to convert the Motion into a summary judgment motion and allow all relevant evidence to be presented on this issue. However, since discovery is in its early stages, the Court will not convert the Motion at this time. The Court may appropriately address spoliation later if Defendants present their spoliation argument in a motion for summary judgment. Thus, the Court will not dismiss Plaintiffs' claims regarding the Rolex watches based on spoliation.

---

[4] The report appears to be incomplete and refers to pictures of the watches as Exhibit 1, but no such exhibit is attached to the report.
[5] Notably, the report states that Mr. Wolf examined 11 watches, but Plaintiffs claim they purchased 25 Rolex watches from Defendants.

In conclusion, the Court will dismiss any claim Plaintiffs may have asserted for breach of the implied warranty of merchantability because, under § 55-2-607(a)(3), Plaintiffs failed to give Defendants notice of the breach within a reasonable time after they discovered the watches were non-genuine. The Court will not dismiss Plaintiffs' Claim II for fraud and Plaintiffs' alternative Claim XI for prima facie tort because Plaintiffs brought those claims within four years after they discovered the alleged fraud.

IT IS ORDERED that the Motion is granted in part as to any claim under the UCC, if Plaintiffs are attempting to assert such a claim, and the Motion is otherwise denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE

17