## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**BOBBY L. WILLIS, individually and as trustee for the**
**BOBBY L. WILLIS AND CARRIE S. WILLIS TRUST,**
**WILLIS ASSET MANAGEMENT, LLC,**
**JTB DEVELOPMENT PROPERTIES 3, LLC, and**
**JTB DEVELOPMENT PROPERTIES 4, LLC,**

      **Plaintiffs,**

**vs.**                                                          **No. 16 CV 167 JAP/LF**

**QUENTIN SMITH and**
**STOREY & CLYDE, INC.**

      **Defendants,**

**QUENTIN SMITH and**
**STOREY & CLYDE, INC.,**

      **Counterclaimants**

**vs.**

**BOBBY WILLIS,**

      **Counterdefendant.**

### MEMORANDUM OPINION AND ORDER

In the COMPLAINT FOR FRAUD AND OTHER CLAIMS (Doc. No. 1-1),

Plaintiffs Bobby L. Willis (Willis), individually and as trustee of the Bobby L. Willis and

Carrie S. Willis Trust; Willis Asset Management, LLC; JTB Development Properties 3,

LLC (JTB 3); and JTB Development Properties 4, LLC (together Plaintiffs) assert claims

against Defendants Quentin Smith (Smith) and Storey & Clyde, Inc. (together

Defendants) arising out of a failed real estate development in Kirtland, New Mexico. The

case was removed from the Eleventh Judicial District Court, San Juan County, New Mexico under this Court's diversity jurisdiction. 28 U.S.C. § 1332(a). In the SECOND MOTION TO DISMISS: CLAIMS CONCERNING ALLEGED INVESTMENT AND CONSTRUCTIVE TRUST OF GEMSTONES, JEWELRY, AND ORGANS (Doc. No. 35) (Motion), Defendants seek dismissal of all claims related to Smith's alleged promise to invest gemstones, jewelry, and antique concert organs in exchange for an ownership interest in Americas Medical Clinic, LLC (AMC) and JTB 3. The Motion has been fully briefed. *See* RESPONSE TO DEFENDANTS' MOTION TO DISMISS CLAIM REGARDING GEMSTONES, JEWELRY, AND ORGANS (Doc. No. 50); and DEFENDANTS' REPLY ON MOTION TO DISMISS CLAIMS CONCERNING ALLEGED INVESTMENT AND CONSTRUCTIVE TRUST OF GEMSTONES, JEWELRY, AND ORGANS (Doc. No. 60) (Reply). The Court will grant the Motion in part and deny the Motion in part.

I.      STANDARD OF REVIEW

Defendants move to dismiss under Rule 12(b)(6). After the close of the pleadings, however, a motion to dismiss is evaluated as a Rule 12(c) motion for judgment on the pleadings. *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 n.2 (10th Cir. 2002). Motions under Rule 12(c) are decided under the same standard as motions under Rule 12(b)(6). In ruling on the Motion, the Court must "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). The court must "accept as true all well-pleaded facts [in the complaint], as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party. . . ." *Archuleta v.*

*Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quotation and alteration omitted).

However, the Court is under no obligation to accept bare conclusory allegations. *Hall v.*

*Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor is the Court required to accept legal

conclusions without factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557

(2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To summarize, a complaint must

contain sufficient factual allegations "to raise a right to relief above the speculative level,

. . . on the assumption that all the allegations in the complaint are true." *Twombly*, 550

U.S. at 555.

In deciding Rule 12(b)(6) and Rule 12(c) motions, courts typically consider only

the facts alleged in the complaint. *County of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d

1031, 1035 (10th Cir. 2002). Nevertheless, courts may review documents referred to in a

complaint, if the documents are central to the plaintiff's claim and the parties do not

dispute their authenticity. *Id.* And, courts may also take judicial notice of documents that

are in the public record. *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1190 (D.N.M. 2013).

II.     FACTUAL BACKGROUND

A.      General Allegations

In 2011, Ronnie Garner (Garner) presented a plan for construction of a project

called the Americas Medical Clinic. (Compl. ¶ 11.) Smith and Garner formed a limited

liability company named Americas Medical Clinic, LLC (AMC). (*Id.* ¶¶ 9, 17.)[1] In

August 2011, Garner hired Smith as project manager for the "various AMC companies."

(*Id.* ¶ 12.) Willis invested his own property in the AMC project based on representations

---

[1] According to the Colorado Secretary of State's records, Willis was the registered agent for AMC, LLC in
December 2011.

made by Smith. (*Id.* ¶ 19.)[2] Due to Smith's mismanagement, the AMC project "collapsed resulting in significant financial losses to the Bobby Willis Plaintiffs." (*Id.* ¶ 24.)

"Smith delivered gemstones and jewelry to Willis as his investment in AMC and companies related to AMC (Exhibit 11)[,]" and Smith "exchanged his gemstones and jewelry as an investment in AMC or JTB 3 LLC." (Compl. ¶¶ 26-27.) Smith, Garner, Michael Atchison (Atchison) and Willis "all met in or around December 29, 2011 and negotiated an agreement confirmed by the attached Exhibit 14 whereby [Smith] transferred his jewelry, gemstones and antique organs for an alleged interest in JTB 3, LLC and AMC." (Compl. ¶ 29.) "This handwritten agreement was then confirmed by Addendums attached hereto as Exhibit 15 dated December 29, 2011 whereby [Smith] was to acquire the 5% interest in AMC and JTB 3, LLC." (Compl. ¶ 30.)

Exhibit 11 is an unauthenticated email from Garner to Willis proposing "that the jewels held by Bobby Willis as asset for the ownership portion of JTB #3, LLC of Quentin Smith be returned to Quentin Smith." Exhibit 14 is incomplete, does not name what entity it is related to, and has illegible handwritten notes on it. Exhibit 15 consists of two pages entitled "Addendums" dated December 29, 2011 that outline the "new" percentage ownership interests of several individuals in AMC and JTB 3. Smith is listed as having a 5% interest in each entity, and Smith's alleged signature appears on the bottom of each Addendum. Even though these exhibits are attached to the Complaint and appear to be central to the claims, the Court will not consider these exhibits because they are unauthenticated and either illegible or inexplicable. The Court will consider this

---

[2] Willis allegedly invested five types of property into the AMC project: (1) real estate that was deeded to JTB 3, (2) 3395 ounces of gold coins; (3) 1117 ounces of silver coins; (4) gemstones; and (5) money paid to Gary Risley, Kyle Finch, and Jennifer Olson for professional services. (Compl. ¶ 19.)

Motion under the Rule 12 standards and not under the Rule 56 summary judgment standards.

In the Complaint, Plaintiffs allege that Smith breached the agreement to invest in AMC and/or JTB 3 because "he never delivered the antique organs; because he later filed false police reports claiming the jewelry and gemstones were embezzled by Bobby Willis and due to his breach of promises and duties relative to AMC and thus any alleged interest in AMC and JTB 3 should be forfeited." (*Id.* ¶ 31.)

"In or around June 24, 2012, Garner arranged for the delivery of [Smith's] gemstones and jewelry to Branson, Missouri because Garner wanted to keep the gemstones and jewelry in a secured location[.]" (Compl. ¶ 33.) At the direction and control of Garner, and with the consent of Smith, all of the gemstones and jewelry were inventoried and stored in an underground storage facility in Branson, Missouri. (*Id.* ¶ 34.) Soon thereafter, Smith claimed that Willis embezzled the gemstones and jewelry, and the State of New Mexico seized the property from the storage facility and held it as evidence in the criminal case against Willis. (*Id.* ¶¶ 36-39.) *See State v. Bobby Willis*, Case No. M-47-FR-201200600. Smith told New Mexico authorities that the gemstones and jewelry were valued at over $5 million, but the property was actually worth far less. (*Id.* ¶¶ 42-44.) An appraiser for the State of New Mexico estimated that the value of many of the gemstones and jewelry was far lower than the value claimed by Smith. (*Id.* ¶ 43.)

### B.    Claims Related to the Gemstones and Jewelry

In Claim II, Plaintiffs allege that Smith negligently or intentionally provided false appraisals of "watches, jewelry and gemstones to which Bobby Willis and his related

companies relied upon to their financial detriment." (*Id.* 57A.) Plaintiffs also allege that

Smith made false statements to law enforcement officials. (*Id.* ¶ 57B.)

In Claim III, Plaintiffs allege that Smith "agreed to exchange his gemstones,

jewelry and organs to AMC" for a 5% interest in AMC, and "Smith breached his

agreement by failing to deliver all the promised goods, [and] by demanding return of the

gemstones and jewelry[.]" (*Id.* ¶ 64.) Plaintiffs also allege that Smith may have

"unilaterally taken action to grant himself larger percentages of AMC and/or JTB 3 than

he deserved." (*Id.* ¶ 68.)

In Claim VI, Plaintiffs assert that Smith engaged in racketeering in connection

with the failed business of AMC and JTB 3. (*Id.* ¶ 78.) In Claim VII, Plaintiffs allege that

Smith is liable for malicious abuse of process for making false reports to law enforcement

authorities that Willis embezzled Smith's gemstones and jewelry. (*Id.* ¶ 82.) In Claim

VIII, Plaintiffs assert that Smith is liable for defamation for reporting that Willis

"engaged in criminal activities" by embezzling Smith's gemstones and jewelry. (*Id.* ¶¶

83-84.)

In Claim X, Plaintiffs ask the Court to impose a constructive trust "on the

gemstones and jewelry for the benefit of the Bobby Willis Plaintiffs or other potential

parties damaged as a result of the fraudulent or negligent acts of Quentin Smith." (*Id.* ¶

94.) Plaintiffs also contend that the "gemstones and jewelry should be sold and the

proceeds escrowed in the Court Registry pending the outcome of this case and potential

recovery by the Bobby Willis Plaintiffs." (*Id.* ¶ 95.) In Claim XI, Plaintiffs assert a claim

for prima facie tort alleging that Smith intentionally caused harm to the Plaintiffs without

justification. (*Id.* 97.)

6

Defendants ask the Court to dismiss all claims related to Smith's gemstones and jewelry. Defendants assert that Smith is "one of many victims of Plaintiff Bobby Willis' schemes to defraud Smith and others through a series of business relationships among Willis, Smith, and many other third parties." (Mot. at 2.) Smith contends that he did not deliver gemstones and jewelry to Willis in exchange for a 5% interest in AMC and JTB 3 but merely gave the gemstones and jewelry to Willis to store in a safe while Smith was visiting New Mexico.[3] In the Reply, however, Smith admits that he "brought the gemstones and jewelry to New Mexico at Bobby Willis's request as a possible investment." (Reply at 7.)[4]

### III.    DISCUSSION

#### A.    Choice of Law

##### 1. Contract Claims

In the Motion, Smith asserts that the claim for breach of an agreement to invest in an LLC is governed by the law of the state where the LLC was formed. The Complaint does not indicate the state in which each LLC was formed. Exhibit A to the Motion is a record from the Colorado Secretary of State's website indicating that JTB 3 is a Colorado limited liability company. (*See* Mot. Ex A.) The Court will take judicial notice of this record from the Colorado Secretary of State's website. *See JP Morgan Trust Co., Nat'l Ass'n v. Mid–Am. Pipeline Co.*, 413 F.Supp.2d 1244, 1258 (D. Kan. 2006) (noting that

---

[3] Notably, Defendants assert in a counterclaim that Smith agreed to perform business and administrative services in exchange for a 5% ownership interest in each entity for which he performed services. ANSWER TO COMPLAINT AND COUNTERCLAIM FOR FRAUD AND OTHER CLAIMS (Doc. No. 6) at p. 12 ¶¶ 14-18. Defendants allege that Smith performed the services, but "Willis failed to provide Smith with the ownership interests as promised, and/or provided interests that Willis knew to be worthless." (*Id.* ¶ 18.)

[4] Smith attached a copy of his answer to Plaintiffs' Interrogatory No. 17 to support this contention. As with the other exhibits, however, the Court will not consider this exhibit in ruling on the Motion.

courts routinely take judicial notice of public documents filed with a secretary of state). No record related to AMC is attached to the Motion, but a search of the Colorado Secretary of State's website reveals that AMC also is a Colorado LLC. *See generally,* www.sos.state.co.us/biz/BusinessEntityHistory (last visited on November 28, 2016). Since 2012, AMC and JTB 3 have been delinquent for failure to maintain a registered agent and for failure to file periodic reports. *Id.*

This Court, sitting in diversity jurisdiction, must apply the choice of law rules of the forum state, New Mexico. *Lyon Develop. Co. v. Bus. Men's Assurance Co. of Amer.*, 76 F.3d 1118, 1122 (10th Cir. 1996). New Mexico generally follows the doctrine of *lex loci contractus*, i.e., the law of the place of contracting controls. *Carl Kelley Const. LLC v. Danco Techs.,* 656 F.Supp.2d 1323 (D. N.M. 2009). Under this standard, it would appear that New Mexico law governs the contract claim related to Smith's alleged promise to invest gemstones and jewelry in exchange for an ownership interest in AMC and JTB 3. However, the New Mexico statute governing LLCs provides, "the laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs and the liability of its managers and members." NMSA 1978 § 53-19-47. Therefore, Colorado law governs the claim that Smith breached a contractual promise to invest the gemstones and jewelry in AMC and JTB 3. *See Weinstein v. Colborne Foodbotics, LLC*, 302 P.3d 263, 266 (Colo. 2013) (stating that Colorado's LLC Act controls the formation and operation of Colorado LLCs).

2.  Tort Claims

New Mexico tort law applies the choice of law principle, *lex loci delicti commissi*, the place where the wrong occurred. The actions alleged in the Complaint occurred in New Mexico; therefore, Plaintiffs' tort claims are governed by New Mexico law. *Skyline Potato Co., Inc. v. Tan-O-On Mktg., Inc.*, 879 F.Supp.2d 1228, 1253 n. 5 (D.N.M. 2012).

B.      Plaintiffs' Claim II for Fraud and/or Negligent Misrepresentation

To state a claim of fraud under New Mexico law, a claimant must allege that the defendant made (i) a misrepresentation of fact, (ii) with knowledge of the falsity of the representation, (iii) with intent to deceive and to induce reliance on the misrepresentation; and (iv) the claimant relied on the misrepresentation to his detriment. *Skyline Potato Co., Inc.*, 879 F. Supp. 2d at 1248–49. In New Mexico, to recover under a claim of negligent misrepresentation, the claimant must allege that the defendant breached a duty of disclosure; the claimant had a right to rely on the misinformation, and the claimant sustained damages. *Ruiz v. Garcia*, 1993-NMSC-009, ¶ 26, 115 N.M. 269, 850 P.2d 972. While negligent misrepresentation may be proven by a preponderance of the evidence, common law intentional fraud must be proven by clear and convincing evidence. *Bhandari v. VHA Southwest Community Health Corp.*, No. 09 CV 932 JB/GBW, 2011 WL 1336512, *17 (D. N.M. Mar. 30, 2011) (citing NMRA, UJI 13-1633) (unpublished).

Plaintiffs allege that Smith misrepresented the value of the gemstones and jewelry. Presumably, Willis, AMC and JTB 3 relied on Smith's representations by transferring a 5% interest in AMC and JTB 3 in exchange for the gemstones and jewelry. These allegations sufficiently state a claim of either intentional fraud or negligent misrepresentation. Smith allegedly misrepresented the value of the gemstones and

jewelry, gave them to Willis with intent to deceive or in breach of a duty to disclose their actual value, and Willis relied on the misrepresentation in granting a 5% ownership interest in AMC and JTB 3 in exchange for the gemstones and jewelry.

As for the allegations in Complaint ¶ 57B, however, Smith cannot be liable to Plaintiffs for fraud based on misrepresentations made to third-party government officials. *Pedroza v. Lomas Auto Mall, Inc.*, 600 F.Supp.2d 1162, 1169 (D. N.M. 2009) (discussing liability for misrepresentation made to a third person). Thus, Plaintiffs may not assert a claim for fraud based on Smith's alleged false statements to government officials.

C.     Plaintiffs' Claim III for Breach of Contract.

Defendants contend that Claim III can only be brought by AMC and JTB 3 and not by Willis or any of the other Plaintiffs. AMC is not a plaintiff. Thus, the Court will dismiss Claim III without prejudice as to any of the allegations related to Smith's promise to invest in AMC. Defendants further assert that since both AMC and JTB 3 are delinquent, neither entity is entitled to sue in this Court.

A business entity's capacity to sue in federal district court is governed by the law of the state under which it was organized. Fed. R. Civ. P. 17(b). Under Colorado law, an LLC must itself bring an action to enforce an agreement to invest. "A member is obligated *to the limited liability company* to perform any enforceable promise to contribute cash or property or to perform services." Colo. Rev. Stat. § 7-80-502(1) (emphasis added). According to the Colorado Secretary of State's website, both AMC and JTB 3 have been delinquent since December 2013 for failure to maintain a registered agent and for failure to file periodic reports. Under Colorado statutory law, a delinquent limited liability company may not bring an action in Colorado courts for the collection of

10

debts. Colo. Rev. Stat. § 7-90-903(1). Hence, the Court will dismiss Claim III without prejudice because at this time, neither AMC nor JTB 3 has the capacity to sue in this Court. *Cf. Associated Communications & Research Services, Inc. v. Kansas Personal Communications Services*, 31 F.Supp.2d 949, 951 (D. Kan. 1998) (noting that dismissal of claim brought by corporation because it was delinquent in paying state taxes should be without prejudice). In the interest of completeness, the Court will address the other arguments in the Motion.

As quoted above, under Colorado law, a member of an LLC "is obligated to the limited liability company to perform any enforceable promise to contribute cash or property or to perform services, even if the member is unable to perform because of death, disability, or any other reason." Colo. Rev. Stat. § 7-80-502(1). However, "[n]o promise by a member to contribute to the limited liability company is enforceable unless set out in a writing signed by the member." Colo. Rev. Stat. § 7-80-502(3) (emphasis added). Defendants maintain that Plaintiffs have failed to allege that there is a valid written agreement obligating Smith to invest in AMC and JTB 3.

Plaintiffs respond that the Complaint alleges the existence of written agreements. Plaintiffs claim that Exhibits 14 and 15 to the Complaint are evidence of a meeting held on December 29, 2011 at which Smith agreed to exchange gemstones, jewelry, and organs for an interest in AMC and JTB 3. (Compl. ¶¶ 29-30.) The Court agrees that the Complaint alleges the existence of a written agreement, but the Court cannot rule on the sufficiency of that agreement. The Court does note that there is no clear statement in either exhibit that Smith invested gemstones and jewelry in exchange for the 5% interest in AMC and JTB 3.

Defendants further argue that Plaintiffs have failed to allege that the contract was sufficiently specific to be enforceable. In Colorado, "to form the basis for an enforceable contract, a promise must be 'reasonably certain'; that is, the promise must be sufficiently specific to 'provide a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Soderlun v. Pub. Serv. Co. of Colorado*, 944 P.2d 616, 620 (Colo. App. 1997). According to Smith, Exhibits 14 and 15 are not sufficiently specific to show that Smith agreed to invest gemstones, jewelry, and organs in exchange for the 5% interest in AMC and JTB 3. As mentioned, the Court will not consider those documents at this time, but will address the sufficiency of any documentary evidence of a written agreement, if necessary, in regard to a motion for summary judgment.

To summarize, Claim III for breach of contract against Smith properly belongs to AMC and JTB 3 because it was these entities that suffered the harm from the breach of a contract to invest. Since those Colorado entities are delinquent, they have no capacity to sue in this Court. For this reason, the Court will dismiss Claim III without prejudice.

        D.      Plaintiffs' Claim VI for Racketeering.

In the Motion, Defendants assert that Plaintiffs' Claim VI purports to incorporate earlier paragraphs into a claim of racketeering, and Defendants seek dismissal of this claim to the extent it is based on Smith's alleged promise to invest the gemstones and jewelry. In the Response, Plaintiffs only state that Defendants "fail to elucidate how the gemstones and jewelry might be related to the claim for racketeering." (Resp. at 6.) The Court agrees with Defendants that Plaintiffs' statement essentially admits that the racketeering claim is unrelated to the gemstones and jewelry. Accordingly, the Court will dismiss Claim VI as it relates to the gemstones and jewelry.

E.     Plaintiffs' Claim VII for Malicious Abuse of Process.

In Claim VII, Plaintiffs allege that Smith "made false reports to governmental agencies, has used the legal system for improper purposes with an illegitimate motive thus committing a malicious abuse of process entitling the Bobby Willis Plaintiffs to compensatory and punitive damages." (Compl. ¶ 82.). The Complaint contains allegations that Smith made false sworn statements to the State of New Mexico, which led the State to pursue criminal charges of embezzlement against Willis. (*Id.* ¶ 45.) In the Complaint, Plaintiffs admit that Willis was arrested and charged with embezzlement, but they allege that the charges were based on Smith's false statement. (*Id.* ¶ 46.) Plaintiffs allege that Willis was falsely imprisoned at the San Juan County Jail until his release on May 28, 2015. (*Id.* ¶ 47.)

In the Motion and Reply, Defendants maintain that Smith truthfully accused Willis of embezzlement because, as a matter of law, Smith owned and was entitled to possession of the gemstones and jewelry, but Willis refused to return the property to Smith. In the Response, Plaintiffs argue that by admitting in the Motion that Smith voluntarily gave his jewels to Willis, Defendants essentially concede that Smith falsely accused Willis of embezzlement.  Moreover, Plaintiffs claim that Willis was not in possession of the property when Smith accused him of embezzlement. Plaintiffs point to the "documentary proof" that "Garner was in possession of the jewels and then delivered them to someone else for safekeeping, and they were in that person's possession – **not** Bobby Willis'– when the police seized them." (Resp. at 7) (emphasis in original). Plaintiffs then ask the Court to conclude that "there is no basis for dismissal of this claim

since Smith did indeed falsely report to the police that Willis 'embezzled' his jewels."
(Resp. at 7.)

Plaintiffs reveal a fundamental misunderstanding of the crime of embezzlement.
"Embezzlement consists of a person . . . converting to the person's own use anything of
value, with which the person has been entrusted, with fraudulent intent to deprive the
owner thereof." NMSA 1978 § 30-16-8. The fact that Willis originally had permission to
possess the property and that the property was later found in a third party's possession, do
not negate the possibility that Willis committed the crime of embezzlement. In addition,
both sides address Smith's truthfulness in accusing Willis of embezzlement, but neither
side adequately addresses the elements of a malicious prosecution claim. *Weststar
Mortgage Corp. v. Jackson*, 2003-NMSC-002, ¶ 17, 133 N.M. 114, 61 P.3d 823.

Under New Mexico law, the torts of malicious prosecution and abuse of process
have been combined into a single cause of action for malicious abuse of process. *Durham
v. Guest*, 2009-NMSC-007, ¶ 29, 204 P.3d 19, 26 (N.M. 2009). To prevail on a claim of
malicious abuse of process, a party must show: (1) the initiation of judicial proceedings
against the plaintiff by the defendant; (2) "an act by the defendant in the use of process
other than such as would be proper in the regular prosecution of the claim"; (3) "a
primary motive by the defendant in misusing the process to accomplish an illegitimate
end"; and (4) damages. *Weststar Mortgage Corp.*, 2003-NMSC-002, ¶ 6 (citation
omitted). Defendants argue that Plaintiffs' claim fails the first element because a report to
a law enforcement agency is, as a matter of law, not the initiation of judicial proceedings.
However, New Mexico courts have held that a person who communicates material
information falsely or inaccurately on which a prosecutor relies, can be regarded as an

"instigator of the proceeding" for purposes of a malicious abuse of process claim *Id.* ¶ 11. The *Weststar* case illustrates why Defendants' argument fails.

Weststar, an escrow company, bought a real estate contract from Jackson. *Id.* ¶ 2. Norwest Bank, acting for Weststar, accidentally transferred into Jackson's bank account over $12,000 more than he was entitled to under the purchase agreement. *Id.* Jackson did not inform Weststar about the mistake, but kept the money, and refused to return the funds to Weststar upon request. *Id.* ¶ 3. Believing that Jackson had committed a crime, Weststar Vice President Inman filed a police report. *Id.* The police detective investigated the claim and gave his findings to an assistant district attorney (ADA) for review. *Id.* ¶ 4. After determining that probable cause existed, the ADA issued a criminal complaint, acquired an arrest warrant from a magistrate judge, appeared at a preliminary hearing, and presented the evidence against Jackson. *Id.* The district court bound Jackson over for trial, but the ADA later dismissed the criminal charges because Norwest Bank failed to provide documents vital for the prosecution. *Id.*

In Weststar's civil case for collection of the funds, Jackson asserted a counterclaim for malicious abuse of process. *Id.* ¶ 5. The district court denied Weststar's motion to dismiss the claim, but the New Mexico Supreme Court reversed. *Id.* As to the first element of the claim, Weststar argued that it had not initiated criminal proceedings, as that term is used in malicious abuse of process claims, but merely reported Jackson to the authorities. *Id.* ¶¶ 9-10. The Court ruled that Weststar's report and cooperation with the criminal investigation was "not sufficient as a matter of law to establish that Weststar initiated the criminal proceedings against Jackson. The Court stressed that the criminal complaint was based on the detective's "independent investigation" and not on the

information supplied by Weststar. *Id.* ¶ 13 ("[T]he independent exercise of prosecutorial discretion establishes as a matter of law that Weststar did not initiate the prosecution.") (citing Restatement (Second) of Torts § 653 cmt. g.).

Defendants argue that Smith merely provided information to the police detective about Willis's embezzlement of Smith's property. Thus, Smith, as a matter of law, did not initiate criminal proceedings against Willis. Importantly, however, Plaintiffs stress that Smith provided false information to the authorities and caused Willis to be falsely accused of a crime. Thus, Plaintiffs have sufficiently alleged the first element of a malicious abuse of process claim, i.e. that Smith initiated criminal proceedings by falsely accusing Willis of embezzlement. *Id.* ¶ 11 ("[T]he defendant can be regarded as an instigator of the proceeding only if (a) he [or she] communicates material information falsely or inaccurately and the prosecutor relies upon his [or her] statement[.]") (citing Dan B. Dobbs, *The Law of Torts* § 431, at 1217 (2000)).

In the *Weststar* case, on the second element of the claim Jackson had to show that Weststar, at the time it went to the police, knew there was no probable cause to believe that Jackson had committed a crime. *Id.* ¶ 17. The New Mexico Supreme Court held that "Weststar had a reasonable belief, founded on known facts," that Jackson had committed a crime, and the belief was confirmed by the investigating detective and the ADA. *Id.* ¶ 18. The fact that the criminal case was dismissed on procedural grounds, and not on the merits, did not alter that conclusion. *Id.* ¶ 19. In this case, Plaintiffs allege that Willis was falsely accused, falsely arrested, and released from custody.

With regard to the third element, Jackson had to show that Weststar initiated the legal proceedings primarily to accomplish an illegitimate end, which must be more than

16

"ill will or spite." *Id.* ¶ 23. The New Mexico Supreme Court concluded that Jackson

failed to prove this element even though Weststar made the criminal report primarily to

get its money back. *Id.* ¶ 24. "[I]f the accuser's belief in the criminal character of the

accused's conduct is reasonable, the proceedings and the existence of an improper

purpose is not enough to make [the accuser] liable." *Id.* ¶ 25 (quoting, Restatement

(Second) of Torts § 668 cmt. g.). But, if Smith accused Willis of embezzlement primarily

to get his property back in breach of his own agreement to invest that property, Smith

may be liable for malicious abuse of process. Thus, Plaintiffs' malicious abuse of process

claim may go forward because they have alleged facts that at the time Smith reported

embezzlement, Smith knew there was no probable cause to believe Willis had committed

a crime.

F.     Plaintiff's Claim VIII for Defamation.

In Claim VIII, Plaintiffs assert that Smith is liable for defamation for publically

reporting that Willis embezzled Smith's gemstones and jewelry. (*Id.* ¶¶ 83-87.) Under

New Mexico law, a prima facie case of the tort of defamation includes: (i) a published

communication by the defendant; (ii) the communication includes an asserted statement

of fact; (iii) the communication was concerning the plaintiff; (iv) the statement of fact is

false; (v) the communication was defamatory; (vi) the persons receiving the

communication understood it to be defamatory; (vii) the defendant knew the

communication was false or negligently failed to recognize that it was false, or acted with

malice; (viii) the communication caused actual injury to the plaintiff's reputation; and

(ix) the defendant abused its privilege to publish the communication. *Heyward v. Credit

Union Times*, 913 F. Supp. 2d 1165, 1190–91 (D.N.M. 2012). In the briefing on the

Motion, both sides focus on the fourth element, whether Smith's report that Willis embezzled Smith's gemstones and jewelry was true or false. Defendants contend that Willis undisputedly gained possession of the property, refused to return it to Smith, and then put the property "into possession of Garner." (Reply at 11.) Defendants then aver, citing to Exhibit 17 of the Complaint, that when Willis gave the property to Garner he told Garner that the property was an "asset" of AMC. (*Id.* citing Compl. Ex. 17.) Even if the Court were to consider Exhibit 17, these facts, that Willis gained possession of the property, transferred possession of the property, and told someone that the property was an asset of AMC, do not establish the truth of Smith's report of embezzlement. If Smith reported Willis as an embezzler for keeping property Smith had agreed to invest in a business venture, Smith could be liable for defamation. Consequently, the Court will not dismiss Claim VIII.

G.      Claim X for constructive trust.

In Claim X, Plaintiffs aver that the gemstones and jewelry are being held as evidence by the State of New Mexico and that a constructive trust should be imposed on this property for the benefit of Willis or "other potential parties damaged as a result of the fraudulent and negligent acts of Quentin Smith." (Compl. ¶¶ 93-94.)  Plaintiffs further assert that the property should be sold and the proceeds escrowed in the Court Registry pending the outcome of the case and potential recovery by Willis. (*Id.* ¶ 95.) Defendants argue that since there was no promise to invest the property, Smith is entitled to ownership of the property and no constructive trust claim can stand. Both sides miss the point.

First, a request for the imposition of a constructive trust is not a cause of action, but is a remedy. *Over and Out, Inc. v. Eclipse Aviation, Corp. (In re AE Liquidation, Inc.)*, 426 B.R. 511, 514 (Bankr. D. Del. 2010) (applying New Mexico law regarding constructive trust). Under New Mexico law,

> [A] constructive trust . . . is imposed to prevent the unjust enrichment that would result if the person *having the property* were permitted to retain it. The circumstances where a court might impose such a trust are varied. They may involve fraud, constructive fraud, duress, undue influence, breach of a fiduciary duty, or similar wrongful conduct.

*Id.* (applying New Mexico law and finding that customers who made deposits to purchase jet airplanes that were never manufactured had sufficiently alleged their right to a constructive trust) (citation omitted) (emphasis added). Under this standard, Plaintiffs' allegations are wholly insufficient to establish the right to a constructive trust. It was Willis who received the property from Smith, not the other way around. Furthermore, according to the Complaint, the property is now being held by New Mexico authorities as evidence in a criminal case. Defendants further assert that the property is in "imminent danger of seizure by the United States in connection with a criminal prosecution of Bobby Willis." (Reply at 12.)  Regardless of whether the New Mexico or United States authorities have possession of the property, Plaintiffs have failed to allege a right to a constructive trust against Smith because Smith does not have possession of the property. Romualdo P. Eclavea,  John A. Gebauer, John Glenn, Glenda K. Harnad, Sonja Larsen, Karl Oakes, and Eric C. Surette, 76 Am. Jur. 2d Trusts § 176 (2016) ("Two essential elements of a constructive trust action have been said to be the existence of identifiable property to serve as the res upon which a trust can be imposed and possession of that res

or its product by the person who is to be charged as the constructive trustee.") (citations and footnotes omitted). Thus, the Court will dismiss Claim X.

        H.     Claim XI Prima Facie Tort

After incorporating previous paragraphs, Plaintiffs state in Claim XI that "Quentin Smith and Garner acted for the purpose of intentionally causing harm to the Bobby Willis Plaintiffs without justification thus entitling the Bobby Willis Plaintiffs to compensatory and punitive damages." (Compl. ¶ 97.) Defendants argue that Plaintiffs' Complaint fails to explain whether this claim is based on the circumstances surrounding the gemstones and jewelry. However, Defendants maintain that to the extent this claim relates to Smith's alleged promise to invest the gemstones and jewelry, the claim must be dismissed because "the investment did not occur." (Reply at 12.) Plaintiffs merely argue that "Defendants fail to articulate a basis for dismissal of this Claim." (Resp. at 8.)

To state a claim for prima facie tort under New Mexico law, a plaintiff must allege (1) an intentional and lawful act; (2) with intent to injure the plaintiff; (3) injury to the plaintiff caused by the act; and (4) the absence of justification for the injurious act. *Healthsource, Inc. v. X-Ray Assocs. of N.M.*, 2005-NMCA-097, ¶ 34, 138 N.M. 70, 116 P.3d 861. Necessarily, this claim is an alternative claim. *Hill v. Cray Research*, 864 F. Supp. 1070, 1080 (D.N.M. 1991) (dismissing a prima facie tort claim because factual allegations stated a claim for another type of established tort). However, if a plaintiff merely re-alleges the facts in support of the other causes of action, adding only a bare recital of the elements of prima facie tort relating to intent and justification, a court should dismiss it "as a means of avoiding the more stringent requirements of other torts." *Id.* In this case, Plaintiffs have not alleged this claim in the alternative. And, Plaintiffs

have merely re-alleged the facts in support of the other claims. Therefore, the Court will dismiss Claim XI.

IT IS ORDERED that the SECOND MOTION TO DISMISS: CLAIMS CONCERNING ALLEGED INVESTMENT AND CONSTRUCTIVE TRUST OF GEMSTONES, JEWELRY, AND ORGANS (Doc. No. 35) is granted in part and denied in part, and the Court will enter a separate order of dismissal of certain claims.

_____
SENIOR UNITED STATES DISTRICT JUDGE