UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

BOBBY L. WILLIS, individually and as trustee for the
BOBBY L. WILLIS AND CARRIE S. WILLIS TRUST,
WILLIS ASSET MANAGEMENT, LLC,
JTB DEVELOPMENT PROPERTIES 3, LLC, and
JTB DEVELOPMENT PROPERTIES 4, LLC,

 Plaintiffs,

vs.                                                                                  No. 16 CV 167 JAP/LF

QUENTIN SMITH and
STOREY & CLYDE, INC.

 Defendants,

QUENTIN SMITH and
STOREY & CLYDE, INC.,

 Counterclaimants

vs.

BOBBY WILLIS,

 Counterdefendant.

MEMORANDUM OPINION AND ORDER ORDER GRANTING
DEFENDANTS QUENTIN SMITH'S MOTION FOR SUMMARY JUDGMENT
REGARDING ALTER EGO LIABILITY

 On January 25, 2017 Defendant Quentin Smith (Smith) filed DEFENDANTS (sic) QUENTIN SMITH'S MOTION FOR SUMMARY JUDGMENT REGARDING ALTER EGO LIABILITY (Doc. No. 70) (Motion). A response to the Motion was due on February 24, 2017. *See* NOTICE OF AGREEMENT TO EXTEND TIME TO FILE RESPONSE (Doc. No. 81). At a status conference on February 27, 2017, Plaintiffs'

1

counsel, Allan Wainwright, informed the Court that Plaintiffs did not intend to file a Response to the Motion. Under Local Rule 7.1(b), "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). The Court will grant the Motion based on Local Rule 7.1(b) and also on the merits and will enter a judgment in favor of Defendants on all claims asserting alter ego liability.

I.   STANDARD OF REVIEW

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). The party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor. *Id.* citing *Clifton v. Craig,* 924 F.2d 182, 183 (10th Cir. 1991). In other words, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the

ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

II.   BACKGROUND

In the COMPLAINT FOR FRAUD AND OTHER CLAIMS (Doc. No. 1-1), Plaintiffs allege that in 2011, Ronnie Garner (Garner) developed a plan for the construction of a project called the Americas Medical Clinic. (Compl. ¶ 11.) In August 2011, Garner hired Smith as manager for the "various AMC companies." (*Id.* ¶ 12.) During the period between December 30, 2011 and February 3, 2012, Smith managed two limited liability companies (LLCs), JTB 3 Development Properties, LLC (JTB 3) and Americas Medical Clinic, LLC (AMC). (Mot. Ex. 1 Smith Aff. ¶¶ 17–18.) Plaintiffs allege that due to Smith's mismanagement of the LLCs, the AMC project "collapsed resulting in significant financial losses to the Bobby Willis Plaintiffs." (Compl. ¶ 24.) Smith received no payment for his services other than a 5% interest in two LLCs: AMC and JTB 3.

Plaintiffs allege that "Smith delivered gemstones and jewelry to Willis as his investment in AMC and companies related to AMC (Exhibit 11)[,]" and Smith "exchanged his gemstones and jewelry as an investment in AMC or JTB 3 LLC." (Compl. ¶¶ 26–27.) Smith, Garner, Michael Atchison (Atchison) and Willis "all met in or around December 29, 2011 and negotiated an agreement … confirmed by Addendums attached hereto as Exhibit 15 dated December 29, 2011 whereby [Smith] was to acquire the 5% interest in AMC and JTB 3, LLC." (Compl. ¶¶ 29–30.) Smith received no other remuneration for his services, and Smith received no documentation confirming his ownership interest in JTB 3 or AMC. (Mot. Ex. 1 ¶¶ 5–12.)

Plaintiffs allege that Smith represented that millions of dollars were needed for the construction of the AMC project, and Smith "contrived a plan to convince Willis to invest assets, time and labor from his company and employees in the project." (Compl. ¶ 18.) Plaintiffs claim Willis relied on Smith's statements and invested "Real Estate that was deeded into JTB 3[,] . . . 3395 ounces of Gold and 1117 ounces of Silver and gem stones delivered directly to Garner which was valued at approximately $10 million[,] . . . [m]oney for professional services, . . . [and] [h]ours of time spent by Bobby Willis and his employees[.]" (*Id.* ¶19A-D.)

Plaintiffs allege that AMC was never properly capitalized and Smith and Garner "used AMC or related entities for improper or fraudulent purposes as their alter ego (sic)." (Compl. ¶ 17.) Smith, Garner and possibly others "operated AMC as their alter ego (sic) and are individually responsible for all damages or losses sustained by Willis in connection with AMC." (*Id.* ¶ 58.) "Any corporate veil of AMC should be pierced such that [Smith] and Garner are individually responsible for any claims or amounts owed by AMC." (*Id.* ¶ 61.) Smith, as the alter ego of AMC, is "personally liable to Willis for failure to pay for all the amounts detailed above, including the fair market value of the 5112 ounces of Gold and Silver, plus interest." (*Id.* ¶ 66.)

After the AMC project failed, Smith demanded the return of his gemstones and jewelry, but Willis refused to return the property. Smith allegedly gave false statements to the State of New Mexico, which led to Willis' arrest on charges of embezzlement. (*Id.* ¶ 45–46.) Willis claims he was falsely imprisoned on those charges at the San Juan County Jail until his release on May 28, 2015. (*Id.* ¶ 47.)

When asked to identify all facts supporting alter ego liability, Willis answered interrogatories and supplemented his answers as follows:

> Interrogatory No. 28: Identify all facts upon which you contend Quentin Smith operated any entity as an alter ego, and explain how each Plaintiff suffered damages as a result of the same.
>
> Answer: Looking back I think all the entities, AMC, Mesquite, and the color LLCs were just sham companies run by Smith to sucker me and others in. The facts are in my complaint and we are going to do discovery to gather more. I was damaged because if there was nothing behind the curtain then it was all a fraud to get me to invest and now lose all my money that I have already detailed herein.
> . . .
>
> Answer: After the fact I learned that the various companies were shams set up by Smith and maybe Garner just as a rouse (sic) to get me to invest. Smith is going to need to prove that all the . . . companies were legit and that the new companies he set up or took over had any real substance. When Smith took over, I am sure he will admit that he started running everything as if he owned it.

(Mot. Ex. 2 & 3.)

> Interrogatory No. 29: Identify all facts and documents that that [sic] support your contention that Quentin Smith is liable to any Plaintiff for the return of any gold or silver, or for repayment of any debts owed by AMC to any Plaintiff.
>
> Answer: He was the manager plus he told me that my investments were safe and not to worry. He was also an owner.
>
> . . .
>
> Answer: Simple. Smith told me he would return the gold and silver. Smith is liable because he defrauded me out of my investments that I detail in the Complaint.

(*Id.*)

III.   DISCUSSION

Under the New Mexico statute governing LLCs, "the laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its

5

organization and internal affairs and the liability of its managers and members." NMSA 1978 § 53-19-47. Since AMC and JTB 3 are Colorado LLCs, the Colorado Limited Liability Company Act and Colorado common law govern Plaintiffs' claim that Smith is liable to for all debts incurred by AMC and JTB 3. *See* Colo. Rev. Stat. § 7–80–103 (describing nature of LLC); § 7–80–203 (describing method of forming an LLC); and § 7–80–1101 (describing the applicability of the LLC Act). *Weinstein v. Colborne Foodbotics, LLC*, 2013 CO 33, ¶ 10, 302 P.3d 263 (noting that Colorado's LLC statute and case law govern claims involving Colorado LLCs). Neither members nor managers of an LLC are personally liable for debts incurred by the LLC. Colo. Rev. Stat. § 7–80–705. The Colorado LLC Act addresses the "application of corporation case law to set aside limited liability" and provides:

> In any case in which a party seeks to hold the members of a limited liability company personally responsible for the alleged improper actions of the limited liability company, the court shall apply the case law which interprets the conditions and circumstances under which the corporate veil of a corporation may be pierced under Colorado law.

Colo. Rev. Stat. § 7–80–107(1). A court may pierce the corporate veil and hold a person who controlled a corporation liable for the debts of the company if it finds (1) the corporate entity is an alter ego or mere instrumentality of the person;[1] (2) the person used the corporate form to perpetrate a fraud or defeat a rightful claim; and (3) an equitable result would be achieved by disregarding the corporate form. *Martin v. Freeman*, 2012

---

[1] Courts consider a variety of factors in determining status as an alter ego, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the entity's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a "mere shell"; (7) legal formalities are disregarded; and (8) corporate funds or assets are used for noncorporate purposes. *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 74 (Colo. App. 2009).

COA 21, ¶ 6, 272 P.3d 1182. *See also McCallum Family, LLC v. Winger*, 221 P.3d 69, 74–75 (Colo. App. 2009) (holding that an insider who was not a shareholder, officer, or director may be liable under alter ego theory if he dominated and controlled the company).

Defendants argue that Plaintiffs' conclusory allegations and discovery responses are insufficient to prove each element of this alter ego claim; therefore, the Court should grant judgment in favor of Defendants. Defendants maintain that Plaintiffs have not shown that AMC and JTB 3 were undercapitalized, and Plaintiffs have not shown how they were damaged as a result of Smith's mismanagement of either entity. Since Plaintiffs have not submitted a response to the Motion, the Court has only the general and unsupported allegations of the Complaint and the vague answers to interrogatories on which to determine whether Plaintiffs have presented a genuine issue of material fact as to Smith's personally liability for AMC's and JTB 3's debts.

Smith proffered an affidavit in support of the Motion. (Mot. Ex. 1.) Smith avers that in September 2011, Willis asked Smith to help him with a business project to construct a medical center in San Juan County, New Mexico. (*Id.* ¶ 2.) Smith was to perform "administrative tasks relating to [AMC] and possibly other companies." (*Id.* ¶ 3.) In exchange for his services, Smith was to receive a 5% interest in any companies for which he performed services. (*Id.* ¶ 4.) Although Smith was listed as a 5% owner in AMC and JTB 3, he "never received any certificate of shares for either company, or from any other company for which [he] performed services at the direction of Bobby Willis." (*Id.* ¶ 7.) Smith never received a form 1099, a W-2, or a form K-1 related to his work for AMC and JTB 3. (*Id.* ¶¶ 8–10.) Smith was never a signatory on bank accounts of AMC

or JTB 3. (*Id.* ¶ 12.) Smith never received remuneration for his services to AMC or JTB 3 in the form of wages or dividends. (*Id.* ¶¶ 13–20.) Smith was not the creator or organizer of AMC or JTB 3. (*Id.* ¶¶ 21–22.) Smith was the manager of AMC and JTB 3 from December 30, 2011 to February 3, 2012, about a month. (*Id.* ¶ 26.)

Neither the Complaint nor the record contains evidence that Smith used AMC or JTB 3 as an alter ego or "mere instrumentality." The Complaint and the record are devoid of evidence that Smith used AMC or JTB 3 to perpetrate a fraud to induce Willis to invest money and property into those entities. Finally, the Complaint and the record contain no evidence from which the Court could find that an equitable result would be achieved by disregarding the corporate form of these entities. Therefore, the Court will grant summary judgment in favor of Defendants under Local Rule 7.1(b) and on the merits, and the Court will dismiss all claims alleging that Smith is individually liable for any debts or obligations of AMC or JTB 3 under the theory of alter ego.

IT IS ORDERED that DEFENDANTS (sic) QUENTIN SMITH'S MOTION FOR SUMMARY JUDGMENT REGARDING ALTER EGO LIABILITY (Doc. No. 70) is granted, and a separate summary judgment will be entered.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE